Good morning. Timothy Hester on behalf of the appellant to Pitcher's Brewing Company. May it please the Court. And I should say first, Your Honor, I'd like to reserve three minutes of my time for rebuttal if I can. We'll do our best there. May it please the Court. The contracted issue here establishes two separate obligations. First, ContekPro was obligated to deliver a finished, pre-inspected kitchen container with a guarantee that it would receive a California-manufactured building sticker. There's a separate obligation in the contract, a separate remedy for breach of contract, that two pitchers could enter a claim for the cost of rectifying any issues if the container was not constructed as planned. Now, ContekPro, in its opposition at pages 15 and 17, argues that the provision for two pitchers does not create an obligation on the part of ContekPro. That flatly misconstrues the contract, and I submit that really tees up the issue before the Court. But what's your best case to support your argument that we should interpret the March, I think, 2023 email as a separate business transaction? There's two propositions, I would say, Your Honor. First, that the couch case out of the Oregon Supreme Court says that a contract is to be construed according to the text and according to the context of the contract. So we have here a prepaid contract, the contract provided for payment in full before delivery. And so there was a significant risk of non-performance. The context of this contract is that the provision for two pitchers to enter a claim for reimbursement is a specified remedy for breach on a prepaid contract. So it has separate meaning. The other case I would point the Court to is ACN Opportunity, also out of the Oregon Supreme Court. The Court must, if possible, construe the contract so as to give effect to all of its provisions. And so we submit that this language of an ability to submit a claim for cost of rectification is a separate contractual remedy structured in this contract, a prepaid contract. But I want to follow up on that point that you're making. Like, what is the injury? What is the measure of damages, however we want to classify that, that's different between the initial breach of just not providing goods that conformed with what the agreement was and then not responding to the claim that was made as a result of that? Like, what's the difference in terms of outcome that you would get? There's two separate injuries, Your Honor. One injury is the failure to deliver the container as finished. I understand that you're going to say, like, what factually is going on is different. But I'm saying, if you come to court and say, breach, they breach the contract and I therefore get a remedy. Yes. What's the difference in remedy between the two factual breaches that you're asserting? The second remedy is the cost of rectifying the deficiencies in the container. That's separate from the failure to deliver a finished container in the first place. Yes, but wouldn't you measure the harm or the damages for the failure to deliver a conforming good based on the cost it would take to make it a conforming good? And isn't that the same thing as the second breach theory you're asserting? It could be. It could be conceptually that way, Your Honor. But here, the contract specified that it could be submitted and two pitchers had the ability essentially to engage in self-help. I think you might be missing the point of my question. I fully understand that you're saying that there are two provisions of this contract that weren't complied with. Yes. What I'm trying to get at is, at a practical level, what is the difference of what you could get for those failures in court in a lawsuit? The difference, well, the failure to deliver a finished pre-inspected kitchen, there were damages associated with that failure in terms of lost revenue, in terms of delay in opening this new tap room in Oakland. In other words, there were significant damages to two pitchers' business from that failure to deliver the original finished product. Then you have a separate question of, okay, then two pitchers separately undertook to finish the container, and it incurred costs for that. Those are different. What are those costs? What are those additional costs? The additional costs were all of the money they spent to finish it, but that's different from the damages to the business. Wouldn't they have tried to get those damages in the first breach theory of, yeah, I get my lost business expense or, you know, my lost business profits for not being able to function and operate as I was supposed to be able to? And then I also get the cost for making this thing what I ordered it to be. I think that, I think conceptually, Your Honor, I agree with you that that would be one piece of what could have been brought as an original claim, but those costs hadn't yet been incurred when the container was first delivered. Those costs hadn't been incurred. Let me ask you this question. You have a contract. In the contract, you both agree that there's a one-year statute of limitations, correct? Yes, Your Honor. And you say on day of delivery, it's deficient. It's not good the day of delivery. You spend another four or five months on day of delivery making it whole, making it right. You write a letter saying we have made it right. You have breached. Then you wait almost a year and a half before you ask for any relief. What happens to the year statute of limitations? Where does the year start? The year runs from a business. There's a contractual one-year limitation, and it runs from a business transaction. And there's two separate business transactions. One business transaction is the failure to deliver in April of 2021. Okay. There's a separate business transaction in relation to this remedy, the ability to seek rectification costs under the contract. That's a separate provision of the contract. When did that come into play? That came into play in March 2023. How is that? Because you fixed the container by August of 2021. No, the container was inspected, was finished, but the costs were still being incurred by two pitchers as late as December of 2021. And it would be contrary, actually. If you would have waited six more months or a year, you think, and then decided to send your letter, that would still be within the terms of the contract? Yes, Your Honor, because it runs off of the business. You could have waited five years. No, I don't think so, Your Honor. Okay, so then what, where, how, I'm just trying to understand your argument and the timing and how that works. There's an overlay of the four-year statute of limitations under Oregon law. But here we have a contractual limitation period. The contractual limitation period is written in terms of a business transaction. There has to be a suit brought within one year of the business transaction. And the business transaction was the request for reimbursement of costs. Now, I can- So why I'm pushing on, like, what is the additional relief that you think you can get from not getting an answer to your request for recovery, is I don't think you have a separate transaction unless you can show injury that's unique to that, or that at least builds on the first transaction that you're arguing about. If the relief is the same for both, you don't have a new one. I don't think there's the same relief, Your Honor. The relief on the first provision, the failure to deliver, which happens in April 2021. The relief on that is the failure to deliver a finished good. The second relief is different. Now, it may be an element of the first claim, but it's different because the contract specifically states that two pitchers can enter a claim for the cost of rectifying issues with the container. If the premise of the court's question is right, it eliminates that provision from the contract effectively, it writes out the provision. Well, you have a procedural injury, but that doesn't give you an action. Well, the claim is the ability to obtain the rectification cost that the contract said two pitchers could obtain. So, and the reason, I mean, I can understand the court is struggling with, well, what's the reason for the time period? The reason was there was an effort to try to settle it, but the rectification costs are specifically provided for. What's the most analogous case that you can point us to to support this theory of yours? Your Honor, I'm not sure there's a case quite on point with this. It comes out of the contract language itself. Okay. And so what I'm pointing to is the contract language that says if you have a business transaction, there has to be a suit within one year of the business transaction. And there's a separate business transaction provided for. If, contrary to what we're arguing, if the conclusion were there's no business transaction associated with the submission of a claim for rectification costs, that effectively writes out of the contract two pitchers' ability to seek rectification costs, if there's no separate injury. If the injury is only from the original delivery, then the ability to seek- Well, but if you can show a separate injury, I just, the problem here is I think we're struggling. I'm struggling with the separate injury. Maybe you might want to spend some time on the attorney's fees, because I'm not sure what your best argument is, why we would look to the Oregon statute when it's covered by the contract. Well, I mean, first of all, the contract provides that it's governed by Oregon law. And so there's really two pieces of this question on the attorney's fees. The first is that the language of the contract says that two pitchers is entitled to recover fees. Due to a contact pro's breach, order pursuant- Is there a breach if it wasn't brought within the statute of limitations? That's my first- Yes, Your Honor, there was a breach. There was a guarantee in the contract that the container would receive a California manufactured building sticker. There was a guarantee. And it never received. No, but because that was not brought in a timely manner, there's no determination of a breach. Well, I think there's no dispute that there was never a California manufactured building sticker for this container. That's an undisputed fact. So that is a breach. But the language is in two parts. It's in the disjunctive. It's either due to contact pro's breach or to pursue its remedies under the contract. It does not require a prevailing party to recover fees. And Oregon law recognizes in the Conifer Ridge case that we cite in our briefs, a prevailing party provision must refer to the prevailing party or employ a similar term. There is no such language in this contract for two pitchers to recover fees. And again, I go back to why would that make sense in the context of this contract? It's because this is a prepaid contract entered into by a startup company. And its ability to recover its fees if there was non-performance was an important piece of this contract. And so it does not require two pitchers to prevail in order to recover its fees. So that's the first. I mean, the argument you're making, the contract trigger is breach. And if we uphold the decision that the claim is untimely, you're never going to have a decision of breach. You're never going to have an adjudication of that. Well, the language is actually pursuing a remedy due to contact pro's breach. There's no dispute that contact pro did not meet the guarantee of the contract. No dispute, because they did not provide the California manufactured building sticker they guaranteed. But alternatively, the language says, or to pursue its remedies. It was, two pitchers was pursuing its remedies. So that's the two pitcher side of why two pitchers is entitled to fees, because the language of the contract does not require two pitchers to prevail in order to recover its fees. And I think it's sensible in the context of this contract why that would be so. Second, on whether contact pro was entitled to its fees. And why wouldn't we look at the statute for that? The statute only applies to contractual provisions that award attorney's fees to the prevailing party or its functional equivalent. And I'm quoting from the quality contractors case out of the Oregon Court of Appeals. So the Oregon statute- They both found that the statute applied in those cases, right? Those were cases that had prevailing party requirements. There's no prevailing party requirement in this contract in relation to the reward of fees. And the Oregon law is very clear that if there's no reference to a prevailing party in the fee provision or some similar concept, then the statute does not apply. So the statute does not permit contact pro to recover its fees under Oregon law. Did you want to reserve the balance of your time? Yes, I do, Your Honor. Thank you. Morning, Your Honors. I'm Dan Bush, representing APALE, Contact Pro. I'd just like to make a few points. Opposing counsel said that the contract does not require two pitchers to prevail in order to have an attorney fee award. Two pitchers does not cite any case, and I'm not aware of any case, that awards attorney's fees to the non-prevailing party in the way they're suggesting. Opposing counsel said there was no breach, or there was a breach, that it's undisputed that there was a breach. Contact Pro acknowledges that the kitchen was delivered without the sticker. However, the reasons for that are disputed. And as the panel pointed out, there was never an adjudication about breach based on the statute of limitations. So it's, although the fact of the delivery without the sticker is not disputed, whether there was a breach or not is disputed and was never adjudicated. Seem to be talking on both sides of your mouth. You didn't deliver proper equipment. You can't say anything that makes that untrue, can you? No, no. Contact Pro admits that the kitchen was delivered without the sticker. But like I said, it's disputed the reasons why, and whether it was agreed that it would be delivered without the sticker. Reasons why don't even matter. You didn't perform your part of the contract. Your argument is, they knew by September of 21 that you had breached the contract. Yeah, absolutely. And they didn't do anything about it. That's your argument. Yeah, on the statute of limitations, absolutely. Yeah, the contractual statute of limitations is a straightforward application of the one year statute of limitations. The opposing counsel was here today. Mr. Hester wrote a letter on September 9th, 2021. It was his letter. His letter. In September of 2021. September 9th, 2021. And nothing else happens until March of 23. They didn't file their claim until May of 23. They sent a, quote, follow up email in March of 2023, following up on the September 9th letter, accounting for the cost they incurred to complete the container when they chose to have separate contractors complete the container, and then offering to settle the claim that they noticed in September. So I believe the panel is absolutely right that there's no independent injury or separate cause of action that arises. It was generated by a follow up email a year and a half later that seeks to settle a claim that they noticed. It had all the information that they needed at the time back in September of 2021. Let's talk about your attorney's fees. Sure. What's your best case to support your argument that the statute ORS 20.096 applies to the contract here? I just had some questions about Juul, and I guess it's Aubrey Towers that followed Juul. Are they analogous to the facts in this case? Well, they, I would say generally they are, yes. Juul interpreted, that's the seminal case by the Oregon Supreme Court that interpreted the reciprocity statute, section 20.096. It broadly applied it. So in that case, the plaintiff was a cosmetology student. He sued the school that he was enrolled at after they terminated him from the program. The jury found for the plaintiff's student. In his enrollment agreement, there was a fee provision that was one-sided. It basically said the student understands and agrees to pay all costs and charges including attorney fees necessary for the collection of any amount not paid when due. The school appealed the attorney's fees award that the student got. The appellate court reversed, but then the Supreme Court interpreted 20.096 very broadly and said that the student, even though the attorney fee provision was limited to the collection of amounts that were not paid when due, that his action for breach of the enrollment program is actually included in the reciprocity statute. So it extended it to a different type of action. And went through the history and the legislative intent of the reciprocity statute and said it was intended to be applied broadly. But in Aubrey Towers, it was the plaintiff that was seeking fees, not the defender, right? Right, that's correct. That seems to be a distinguishing fact from here. Well, I would actually say Aubrey Towers, which was decided after the two cases that applied JUUL and was decided after the two cases that two picture sites on the fee issue, Spectra Nove and Quality Contractors. I would say that case also applies the reciprocity statute broadly in that it ultimately found that fees are available applying JUUL to the prevailing party and the type of action contemplated by the fee provision, quote, regardless of which party brought the claim. Yeah, so it seems to me under Oregon law, the question is, does this contract trigger the statute? And that boils down to, does the contract have to have some sort of magic words reference to prevailing party or not? Because if the statute is triggered, the statute basically rewrites people's contracts in Oregon to say, if you're going to provide for attorney fees and contract actions, it's going to be reciprocal either way. Right, no, that's correct. That's a very good point. So then it comes down to his point about, no, there's case law out there that says you need the magic words. This provision doesn't say anything about a prevailing party, and so it doesn't apply. Why is that? I mean, I think you think that's wrong. Why is that wrong? I do. I would point to JUUL again. In JUUL, the fee provision didn't have a prevailing party, any explicit prevailing party language in it. It just simply said the student acknowledges that they will pay costs and expenses, including attorney's fees, necessary to collect any amount due that was not paid when due. So there's no explicit prevailing party language in that provision. And I would also suggest that suppose in that case the school sues a student for, say, $10,000 of tuition that was not paid. The school wins, is awarded $1 out of the $10,000. The school is clearly not the prevailing party, overall prevailing party on that claim. But the Supreme Court of Oregon said the reciprocity statute applies in that circumstance to that fee provision. But I guess the other question I would have is why didn't ContactPro draft the contract here? It was a form that ContactPro used, but the parties went back and forth and negotiated several provisions, including two pitchers adding the mirror language that entitles, you know, that says two pitchers can have attorney's fees when it pursues its rights under the contract. It also added the language about submitting the claim for reimbursement. So the contract was negotiated back and forth. So you're saying it's contested that you drafted the contract? Yes. So then just outline, because you're the prevailing party here, I guess that's what you're asserting, right? You should get attorney's fees because of what words in the contract that trigger the statute? Well, so the contract has two mirroring attorney fees provision. It says either party, they're the same language. It just substitutes the parties either way. So in some ways, it is a reciprocal attorney's fees provisions in the contract, but they're only offensive. So they only consider when one party pursues their claims. We were awarded fees under the statute because we prevailed on the claim that two pitchers brought. And the reciprocity statute says you get attorney's fees if you prevail on a claim, regardless of if the provision says you're the party that, you know, the prevailing party gets fees, regardless of it says you're the party that's entitled to fees. So, again, Juul has no explicit prevailing party language in the attorney's fees provision that was at issue in that case, and the Oregon Supreme Court interpreted it and said the reciprocity statute applies. I'd also like just to point out, if it's okay with the panel, going back to the statute of limitations issue, there, the contract does not have any language that obligates ContactPro to respond to a claim for reimbursement in any way. It just says that two pitchers can submit a claim for reimbursement. So there's almost two levels of unbound time. If you go with two pitchers' interpretation here, the position here, they can wait five or ten years, submit a claim for reimbursement, and then wait an unknown amount of time for ContactPro to respond before. The question is, when does ContactPro possibly breach that obligation? There's no obligation in the contract to even respond to the claim for reimbursement. That would constitute a breach. So there's an unbound amount of time that, under two pitchers' interpretation, there's an unbound amount of time that can wait to submit the claim for reimbursement, and there's an unbound amount of time that can wait in order to say, oh, wait a second, now you breached by not responding to our claim for reimbursement. And that obviously reads the one-year contractual statute of limitations out of the contract. It also violates the statutory four-year provision in Oregon that explicitly says you can't extend, by contract, you can't extend the statute of limitations beyond four years. So I think, respectfully, I think the panel, if you don't have any other questions, I might submit there. Thank you very much. Thank you. Thank you.  Just a few points. I know my time is tight. The Jewell case and the Aubrey Towers case both involve prevailing party contract arrangements on the fee awards. So those are both cases that are subject. I'm not sure if that's true, but I'm looking at Benchmark Northwest, which is an Oregon Court of Appeals decision that discusses Jewell and some of these other cases. And it quotes in full the contract provision I'd issued there that addressed fees. And there is nothing about a prevailing party in there. In fact, that provision said that you're going to get a recovery of fees even if no lawsuit is filed. And they've said that the statute was triggered by that language. So I'm not sure I follow your argument that you need the magic words. Well, the quality, I mean, first of all, let's go back to Jewell. I'm quoting out of Jewell, and it's at 290 Oregon 885 at page 887. And this is a quote. The maker further understands and agrees to pay all costs and charges for attorney's fees necessary for the collection of any amount not paid when due. The Oregon courts have construed that kind of language as a prevailing party requirement. In other words, if we bring a case against you and we prevail, you owe us fees. So it was a prevailing party requirement. It didn't use those words, but it had that concept. I understood your argument before to be you need the words. It's the words or the functional equivalent. That's out of quality contractors. Quality contractor says the statute applies, quote, only to contractual provisions awarding attorney's fees to the prevailing party or its functional equivalent. And that's 911 P. 2nd at 1270. So if there's that little wiggle room, why isn't your contract provision the functional equivalent? Because there's no reference. There's no reference to prevailing or any comparable concept in the fee language. The fee language doesn't. It says if you have to pursue a claim for your remedies, then you're entitled to your fees. It doesn't. It does not say you have to prevail on that claim. There's no comparable concept in the Oregon cases. Aubrey Towers and in Jewell, both. And Aubrey Towers, the contract, and again, quoting 278 P. 3rd at 49. The contract provided that, quote, the prevailing party was entitled to attorney's fees. And quality contractors, which is binding here on the court, is a construction of Oregon law that says the statute doesn't apply to a fee arrangement like this, which does not provide. It does not require a prevailing party. Thank you. Thank you, Your Honor. Mr. Hester, Mr. Bush, really appreciate your oral argument presentations here today. The case of W.G. Barr Management LLC versus Santec Pro LLC is now submitted.
judges: MURGUIA, FORREST, Collins